UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHEYANNE WEAVER,

                                  Plaintiff,

                                                                                       Case # 17-CV-6562-FPG

v.

                                                                                       DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

**INTRODUCTION**

Cheyanne Weaver brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 10. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

On February 19, 2014, Weaver protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 202-07. She alleged disability since February 19, 2013 due to scoliosis and attention deficit hyperactivity disorder. Tr. 235. On June 29, 2016, Weaver appeared and testified at a hearing before Administrative Law Judge Elizabeth W. Koennecke ("the ALJ"). Tr. 29-54. The ALJ determined that a supplemental hearing was necessary to obtain vocational

---

[1] References to "Tr." are to the administrative record in this matter.

1

expert ("VE") testimony. Tr. 10. Thus, on August 30, 2016, the ALJ conducted a video hearing with Weaver's attorney and a VE; Weaver chose not to appear. *Id.*; Tr. 55-65. On September 7, 2016, the ALJ issued a decision finding that Weaver was not disabled within the meaning of the Act. Tr. 10-23. On June 13, 2017, the Appeals Council denied Weaver's request for review. Tr. 1-4. Thereafter, Weaver commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Weaver's claim for benefits under the process described above. At step one, the ALJ found that Weaver had not engaged in substantial gainful activity since the application date. Tr. 13. At step two, the ALJ found that Weaver has a mental impairment that constitutes a severe impairment. Tr. 13-14. At step three, the ALJ found that this impairment did not meet or medically equal any Listings impairment. Tr. 14-16.

Next, the ALJ determined that Weaver retains the RFC to perform a full range of work at all exertional levels but with nonexertional limitations. Tr. 16-22. Specifically, the ALJ found that Weaver can understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others to carry out simple tasks; and handle simple, repetitive work-related stress, meaning that she can make occasional decisions directly related to performing simple tasks in a stable, unchanging work environment. Tr. 16. The ALJ also found that Weaver is limited to superficial contact with coworkers and the public. *Id.*

At step four, the ALJ indicated that Weaver has no past relevant work. Tr. 22. At step five, the ALJ relied on the VE's testimony and found that Weaver can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 22-23. Specifically, the VE testified that Weaver can work as a garbage collector, kitchen helper, and photocopy machine operator. Tr. 23. Accordingly, the ALJ concluded that Weaver was not "disabled" under the Act. *Id.*

## II. Analysis

Weaver argues that remand is required because the ALJ created a gap in the record that she was obligated to develop when she rejected the only medical opinion as to Weaver's mental capacity.[2] ECF No. 7-1 at 18-25; ECF No. 11 at 3-6. The Court agrees.

### A. Legal Standard

The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed her application unless it is necessary to develop an earlier period. 20 C.F.R. § 416.912(b). The ALJ must "make every reasonable effort" to help the claimant get medical reports from her medical sources. *Id.* Remand is warranted if the ALJ fails to fulfill her duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

Additionally, an ALJ cannot "assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Even though the Commissioner is empowered to make the RFC determination, "where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the

---

[2] Weaver advances another argument that she believes warrants reversal of the Commissioner's decision. ECF No. 7-1 at 15-18; ECF No. 11 at 1-3. However, the Court will not address that argument because it disposes of this matter based on the ALJ's failure to develop the record.

5

connection" herself. *Id.* (citation and alterations omitted); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.") (citations omitted).

**B      Application**

Here, Weaver's social worker Gayle Alesi submitted a Department of Social Services psychological assessment that evaluated Weaver's ability to perform mental work-related functions. Tr. 331-34. Ms. Alesi opined that Weaver is "moderately limited" in maintaining attention and concentration for rote tasks, which means she is unable to do this 10-25% of the time. Tr. 333. She also opined that Weaver is "very limited" in performing simple and complex tasks independently, regularly attending to a routine, and maintaining a schedule, which means she is unable to perform these functions 25% or more of the time. *Id.* The ALJ summarized Ms. Alesi's opinion and gave it "limited weight to the extent that it is supported by the objective medical evidence of record." Tr. 21. Regardless of whether the ALJ properly discounted this opinion,[3] her rejection of the only medical opinion as to Weaver's mental capabilities left a significant gap in the record. *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the

---

[3] The Court notes that as a social worker, Ms. Alesi is an "other source" rather than an "acceptable medical source," and thus her opinion is not presumptively entitled to controlling weight. *Seignious v. Colvin*, No. 6:15-cv-06065 (MAT), 2016 WL 96219, at *6 (W.D.N.Y. Jan. 8, 2016) (citing S.S.R. 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. Aug. 9, 2006)); 20 C.F.R. §§ 416.913(a), (d) (effective Sept. 3, 2013 to Mar. 26, 2017). Nonetheless, opinions from "other sources" are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3.

The Court declines to analyze whether the ALJ properly weighed Ms. Alesi's opinion. On remand, however, the ALJ must weigh Ms. Alesi's opinion based on the factors set forth in the regulations, 20 C.F.R. § 416.927(c)(1)-(6), and should "explain the weight" given to Ms. Alesi's opinion. S.S.R. 06-03p, 2006 WL 2329939, at *6. Moreover, the ALJ may not discount Ms. Alesi's opinion simply because she is not an "acceptable medical source." *See, e.g.*, *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344-45 (E.D.N.Y. 2010).

ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original).

The ALJ's decision summarizes Weaver's testimony regarding her mental health and acknowledges treatment notes from various psychiatric evaluations. Tr. 17-21. The treatment notes that the ALJ cites to (Tr. 339, 371, 607, 614-15, 627, 631, 637, 645, 656, 698, 704, 707, 710), however, contain only raw medical evidence and do not address how Weaver's mental impairments affect her ability to perform work-related functions on a regular and continuing basis. *See* S.S.R. 96-8p, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); 20 C.F.R. § 416.945(c) (stating that the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing her mental capacity).

Moreover, the ALJ's RFC analysis does not tie any of this cited evidence to the mental demands of competitive work. Tr. 16-22. The ALJ merely concludes that Weaver "is capable of work in a low stress, low contact environment such as that contemplated by the [RFC]" because "there is somewhat of a willful component to [Weaver]'s level of functioning. If she is interested in the job, she believes herself to be capable of same. When she takes her medication, her symptoms are controlled." Tr. 21.

Even though the ALJ rejected the only opinion as to Weaver's mental capacity and otherwise acknowledged treatment notes that contained only raw medical evidence, the ALJ somehow determined that Weaver could work at all exertional levels with highly specific

nonexertional limitations.[4] Tr. 16. It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this determination without relying on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").

Without a function-by-function assessment relating the medical evidence to the mental requirements of competitive work or reliance on a medical source's opinion as to Weaver's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (noting that the ALJ is not required to perform an explicit function-by-function RFC analysis but that "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review") (citation omitted).

For the reasons stated, the Court finds that the ALJ erred when she determined Weaver's RFC without a supporting medical opinion. Accordingly, remand is required.

### C. Considerations on Remand

On remand, the ALJ has many available avenues to fill this gap in the record, including obtaining a consultative psychiatric examination. *See Covey*, 204 F. Supp. 3d at 507 (citation omitted). The Court notes that Weaver missed two prior consultative examinations without notice—one scheduled for April 8, 2014 and one scheduled for April 23, 2014. Tr. 68-69, 251. The record reveals, however, that Weaver was hospitalized for psychiatric issues from April 22

---

[4] The ALJ found that Weaver can understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others to carry out simple tasks; and handle simple, repetitive work-related stress, meaning that she can make occasional decisions directly related to performing simple tasks in a stable, unchanging work environment. Tr. 16. The ALJ also found that Weaver is limited to superficial contact with coworkers and the public. *Id.*

until May 1, 2014 and was readmitted on May 5, 2014—which explains why she missed the second consultative examination and could not be reached by telephone. Tr. 339-411; *see also* 20 C.F.R. § 416.918(b)(1) (noting that illness on the date of the scheduled examination constitutes a "good reason" for failing to appear). The ALJ recognized that Weaver failed to attend these appointments and noted that it "detracted" from her disability allegations. Tr. 19.

The SSA's regulations provide that an ALJ may find an individual "not disabled" if she does not have a good reason for failing to attend a consultative examination. *See* 20 C.F.R. § 416.918(a). The ALJ may also make a disability determination based on the evidence before her "when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [the claimant is] disabled." 20 C.F.R. § 416.920b(d) (effective Mar. 26, 2012 to Mar. 26, 2017).

The ALJ's decision did not cite these reasons for finding Weaver not disabled and determining her RFC without reliance on a medical opinion. It is also unclear whether the ALJ took other actions to resolve the insufficiency of the record. *See* 20 C.F.R. § 416.920b(c)(1), (2), (4) (stating that, if the record evidence is insufficient to make a disability determination, the ALJ may recontact medical sources, request additional existing records, or ask the claimant or others for more information). On remand, the ALJ should make clear what actions she took to develop the record as to Weaver's mental ability to work. The Court also reminds Weaver that she must provide medical and other evidence to the SSA upon request and that, if she fails to do so, the SSA will "have to make a decision" based on the information available. *See* 20 C.F.R. § 416.916.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, and this matter

9

is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: May 4, 2018
       Rochester, New York

                                          HON. FRANK P. GERACI, JR.
                                          Chief Judge
                                          United States District Court